## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; MSPA CLAIMS 1, LLC, a Florida entity, | Case No. |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| | DEMAND FOR JURY TRIAL |
| vs. | |
| USAA CASUALTY INSURANCE COMPANY, a Texas company, | |
| Defendant. | |

### COMPLAINT

Plaintiffs, MAO-MSO Recovery II, LLC, a Delaware entity; MSP Recovery, LLC, a Florida entity; and MSPA Claims 1, LLC, a Florida entity (hereinafter collectively referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, bring this action against against USAA Casualty Insurance Company, a Texas company (hereinafter referred to as "Defendant"), and state as follows:

### INTRODUCTION

1.     Defendant failed to fulfill its statutorily-mandated duty to reimburse Medicare Advantage Organizations ("MAOs") for medical expenses arising out of automobile accidents.

2.     Under Medicare Secondary Payer provisions of the Medicare Act, MAOs are, by law, secondary payers for any medical expenses that are covered by a policy of insurance under its terms and provisions.  This means that when there is any other source that is responsible for payment for a medical claim(s), *i.e.*, an insurance policy, that has a contractual obligation to pay for the medical services pursuant to the terms and conditions of the policy, there is a "demonstrated responsibility" requiring the primary payer to pay pursuant to it terms and conditions before a Medicare payer like Plaintiffs and the class should pay for the same medical expenses.

3.      Defendant offers automobile insurance policies that contain no-fault[1] coverages as well as medical payments ("Med Pay") coverage for any automobile accident-related medical expenses. The policies are required to provide primary coverage for medical bills incurred pursuant to the relevant policies of insurance and statutory provisions that mandate no-fault coverage as applied by the specific states within the United States.

4.      Plaintiffs assert the rights of MAOs via assignment of all rights, title, and interest allowing them to bring these claims.

5.      Plaintiffs and the putative class members ("Class Members") provided Medicare benefits to Medicare-eligible beneficiaries enrolled under the Medicare Advantage program. These Medicare beneficiaries were simultaneously covered by insurance policies issued by Defendant, which made Defendant the primary payer for the medical bills, services, and items paid by Plaintiffs and the Class Members. MAOs paid for the medical items or treatment even though the Defendant was responsible for paying those expenses under their no-fault insurance policies and the Medicare Secondary Payer provisions of Medicare.

6.      This lawsuit seeks reimbursement for those accident-related medical expenses paid for by the Plaintiffs' assignors and all other MAOs that should have been paid, in the first instance, by Defendant under the Medicare Secondary Payer provisions.

7.      As such, Plaintiffs filed this action on behalf of themselves and all other similarly situated Class Members for: (1) double damages, pursuant to the Medicare Secondary Payer private cause of action, 42 U.S.C. § 1395y(b)(3)(A); and (2) breach of contract under Plaintiffs' direct right of recovery.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d).  At least one member of the class is a citizen of a different state than the Defendant and the

---

[1] The term "no-fault insurance" shall mean insurance that pays for medical expenses for injuries sustained in the use, occupancy, or operation of an automobile, regardless of who may have been responsible for causing the accident. The term shall also include any medical payments coverage within the automobile insurance policy.

aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

9.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for any non-federal claims alleged herein.

10.     This Court has personal jurisdiction over the Defendant insofar as the Defendant is authorized and licensed to conduct business in Florida, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail itself of the benefits in this judicial district.

11.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391.

## BACKGROUND

### I.      Medicare

12.     In 1965, Congress enacted the Medicare Act with the purpose of establishing a federally-funded health insurance program for the elderly and disabled.

13.     The Medicare Act consists of five parts:  Part A, Part B, Part C, Part D, and Part E.  Parts A and B create, describe, and regulate traditional fee-for-service, government-administered Medicare.  *See* 42 U.S.C. §§ 1395c to 1395i–5; §§ 1395–j to 1395–w.  Under Parts A and B, Medicare provides hospital insurance and coverage for medically necessary outpatient and physician services.  42 U.S.C. § 1395w-21(a)(1)(A).  These benefits are administered on a per-fee basis, meaning Medicare pays for a beneficiary's medical needs as they arise.  The United States Centers of Medicare & Medicaid Serives ("CMS") provides coverage under Parts A & B.  Part C outlines the Medicare Advantage program—described in further detail below—wherein Medicare beneficiaries may elect to use private insurers, *i.e*., MAOs, paid for by the United States, to provide Medicare benefits.  42 U.S.C. §§ 1395w–21–29.  Part D provides for prescription drug coverage for Medicare beneficiaries, and Part E contains various miscellaneous provisions.

### II.     Medicare Secondary Payer Laws

14.     At the time of its inception, Medicare was the primary payer of medical costs. When a Medicare beneficiary was injured, the medical bill was submitted directly to Medicare, even if there was overlapping insurance coverage for that patient.  However, in an effort to reduce escalating costs, Congress altered the Medicare payment scheme in 1980 by adding the Medicare Secondary Payer ("MSP") provisions to the Medicare Act.

15.     Under the MSP provisions, codified at 42 U.S.C. § 1395y, Medicare is the "secondary payer" to all other sources of coverage.  If there is overlapping insurance coverage for a particular beneficiary, that overlapping coverage is primary, *i.e.*, it pays the medical expense first—Medicare is always secondary.

16.     The MSP provisions implement this scheme by forbidding Medicare from paying medical expenses when "payment has been made or can reasonably be expected to be made . . . under an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii).  This prohibition applies to any "[p]ayment under" the Medicare Act.  42 U.S.C. § 1395y(b)(2)(A).  If a primary payer, such as a no-fault insurer, "has not made or cannot reasonably be expected to make payment," Medicare makes a conditional payment.  42 U.S.C. § 1395y(b)(2)(B)(i).  However, since Medicare is the secondary payer, the primary payer (such as a no-fault or medical payments insurer) must reimburse Medicare for all conditional payments.  42 U.S.C. § 1395y(b)(2)(B)(ii).

17.     To enforce this scheme, the MSP provisions created "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)[.]"  42 U.S.C. § 1395y(b)(3)(A).

18.     As no-fault and/or Med Pay insurers that issue policies pursuant to each state's no-fault laws[2] or other laws allowing issuance of no-fault and Med Pay policies, Defendant is a

---

[2]  Delware Motorists Protection Act, 21 Del.C. § 2118; Florida Automobile Reparations Act, Fla. St. Ann. §§ 627.730 – 627.746; Hawaii Motor Vehicle Insurance Law, H.R.S. §§ 431:10C-103.5 – 103.6 *et al.*; Kansas Automobile Injury Reparations Act, K.S.A. §§ 40-3101 *et seq.*; Kentucky Motor Vehicle Reparations Act, K.R.S. §§ 340.39-040 *et al.*; Massachusetts Motor Vehicle laws, M.G.L.A. 90 § 34M; Michigan No-Fault Insurance Act,

4

primary payer and plan. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include no-fault insurance); 42 C.F.R. § 411.21 (same).

## III.    Medicare Advantage Organizations

19.    In 1997, Congress amended the Medicare Act and added Part C. "The congressional goal in creating the Medicare Part C option was to harness the power of private sector competition to stimulate experimentation and innovation to create a more efficient and less expensive Medicare system." D. Gary Reed, Medicare Advantage Misconceptions Abound, 27 Health Law 1, 3 (2014). Part C gives Medicare beneficiaries the option of receiving Medicare benefits through private insurers (*i.e.*, MAOs).[3]

20.    MAOs enter into a contract with CMS to administer and provide the same benefits received under traditional Medicare. 42 U.S.C. §§ 1395w-21, 1395w-23. Pursuant to this contract, MAOs receive a fixed payment from CMS for each enrollee. MAOs do not issue a Medicare "insurance policy" but, rather, send out a document describing the Medicare benefits that enrollees receive. They do not pay benefits pursuant to a 'policy', but rather under a statutory framework. Thus, MAOs pay healthcare providers directly for the care received by Part C enrollees. If the costs of this care exceed the fixed payment received from the government, the MAO assumes the risk and cost. However, if that care costs less than the fixed payment, the MAO keeps the difference as profit. Thus, MAOs are incentivized to provide health insurance more efficiently and focus on positive health outcomes in a way that traditional fee-for-service Medicare models are not. *See* H.R.Rep. No. 105–149, at 1251 (1997) (Part C allows "the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options.").

---

M.C.L.A. §§ 500.3101 *et seq.*; Minnesota No-Fault Automobile Insurance Act, M.S.A. §§ 65B.41 *et seq.*; New Jersey Automobile Reparation Reform Act, N.J.S.A. §§ 39:6A-1 *et seq.*; New York Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law §§ 5101 *et seq.*; North Dakota Insurance Code, N.D.C.C. §§ 26.1-41-01 *et seq.*; Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. §§ 1701 *et seq.*; Utah Motor Vehicle Insurance law, U.C.A. 1953 §§ 31A-22-307 *et al.*; Puerto Rico Automobile Accident Social Protection Act, 9 L.P.R.S. §§ 2051 *et seq.*
[3] Originally, these plans were considered "Medicare+Choice" plans, but the Medicare Modernization Act (MMA) of 2003 renamed this service "Medicare Advantage" plans.

21.     To become an MAO, a private insurer must enter a bidding process, meeting certain requirements set by CMS.  Additionally, in providing the basic benefits offered to traditional Medicare enrollees, MAOs must abide by national coverage determinations provided by CMS and all coverage disputes between enrollees and MAOs must go through the traditional Medicare appeals processs.  CMS sets the fixed rate at which MAOs will be renumerated per enrollee and establishes services the MAO must provide.

22.     An enrollee's health coverage with an MAO is strictly construed and regulated by CMS.  For instance, CMS creates templates that MAOs must utilize when creating documents, including among others, the evidence of coverage ("EOC"), a document that describes in detail the helath care benefits covered by the health plan. CMS requires that every evidence of coverage contain the following language:

> [w]e have the right and responsibility to collect for covered Medicare services for which Medicare is not the primary payer. According to CMS regulations at 42 CFR §§ 422.108 and 423.462, [insert 2017 plan name], as a Medicare Advantage Organization, will exercise the same rights of recovery that the Secretary exercises under CMS regulations in subparts B through D of part 411 of 42 CFR and the rules established in this section supersede any State laws.

23.     The amount paid to the MAO is carefully calibrated, taking into account, such factors as the geographic location, age, disability status, gender, institutional status, and health status of *each* Medicare Advantage enrollee, so as to ensure actuarial equivalence with the traditional Medicare fee-for-service program option.  *See* 42 U.S.C. § 1395w-23(c).

24.     Currently, there are over 16 million individuals enrolled in Medicare Advantage plans nationwide. More than 37 million individuals are enrolled in Medicare prescription drug plans ("PDPs"), either on a stand-alone basis or in connection with a Medicare Advantage plan.

25.     The size and expense of the Medicare Advantage program makes it important that auto insurance companies, like Defendant, do not deflect their financial obligations under the MSP law onto MAOs and ultimately onto the Medicare Trust Funds.[4]

---

[4] Medicare is paid for through two trust fund accounts held by the U.S. Treasury. https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-

26.     Beneficiaries who receive their benefits through the traditional Medicare scheme and those who elect to receive their benefits through an MAO plan are all considered Medicare beneficiaries.  Moreover, the MSP provisions apply with equal force to MAOs.  Indeed, MAOs are specifically allowed to "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations[.]" 42 C.F.R. § 422.108(f).

27.     The legislative history of the MSP provisions demonstrate that MAOs were intended to occupy a status analogous to that of traditional Medicare:

> [u]nder original fee-for-service, the Federal government alone set the legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes. Therefore, the Conferees intend that this legislation provide a clear statement extending the same treatment to private [MA] plans providing Medicare benefits to Medicare beneficiaries.

H.R.Rep. No. 105–217, at 638 (1997).

28.     Part C of the Medicare Act also contains the following important provisions:

> Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w–22(a)(4).

29.     Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which … are not ***reasonable*** and ***necessary*** for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A) (emphasis added).

30.     Because this Section contains an express condition of payment – that is, "no

---

Reports/ReportsTrustFunds/Downloads/TR2016.pdf (last visited Feb. 19, 2017).

payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

31.     Once an MAO makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

32.     If a Medicare beneficiary or primary payer contests an MAO's right to reimbursement, the claim is construed as "arising under" the Medicare Act. Therefore, the time limitations for contesting whether a claim is reasonable or necessary under the Medicare Act applies.

33.     In this case, Defendant failed to administratively appeal the MAOs' right to reimbursement within the administrative remedies period on a class-wide basis. Defendant, therefore, is time-barred from challenging the propriety or amounts paid.

34.     Furthermore, the MSP provisions create a private cause of action against a primary plan when the primary payer fails to pay first or does not reimburse an MAO for its payment: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with [the requirements of the MSP Act]." § 1395y(b)(3)(A).  The provisions do not place any limitations on which private parties may bring suit.

**IV.     Primary Payer Reporting Requirements**

35.     In 2007, the Medicare Act was once again amended by the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA"), which aimed to improve the ability of CMS and MAOs to administer Medicare benefits.  Part of those changes specifically aimed to help CMS and MAOs identify when a Medicare beneficiary was covered by a primary insurance payer. When automobile accident victims go to the emergency room, they do not typically present their auto insurance card—they present their Medicare insurance credentials, and the medical expenses are sent to the Medicare provider.  Then, when the bill comes due, unless the auto

insurance company affirmatively discloses that it is the primary payer for that medical expense, neither CMS nor MAOs know that these medical expenses should be paid by a primary payer. Consequently, CMS and MAOs pay the bill, and the automobile insurer avoids having to pay—at the expense of taxpayers.

36.     The 2007 amendments, therefore, created an affirmative duty on primary payers, such as Defendant, to notify Medicare and MAOs when they should pay for medical expenses or be primary payers.  Specifically, Responsible Reporting Entities ("RREs"), which include automobile insurers like the Defendant, must determine whether its insureds are Medicare beneficiaries when they have been injured in an automobile accident.  42 U.S.C. §§ 1395y(b)(7)(A)(i)[5] (RREs shall "determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under" Medicare).  If an insured is a Medicare beneficiary, the RRE must electronically notify CMS of the accident and report the Medicare beneficiary's full name, Medicare Health Insurance Claim Number ("HICN"), gender, date of birth, complete address, and phone number.  42 U.S.C. § 1395y(b)(7)(A)(ii).[6] Then, when CMS or an MAO receives a medical claim for payment for that identified Medicare beneficiary/insured, the claim can be cross-checked against the notification database to determine whether there is a primary payer responsible for the medical claim.  Anticipating the burden of the new reporting requirements, CMS developed a "query process" whereby an RRE can determine a claimant's Medicare status electronically and without authorization.  RREs can electronically query whether a particular insured is a Medicare beneficiary and, if so, make sure to notify Medicare when that insured is in an accident that resulted in the provision of medical treatment.

37.     An insurance company's failure to comply with these reporting requirements results in a civil money penalty of up to $1,000.00 for each day of noncompliance with respect to

---

[5] *See* 42 C.F.R. § 411.25.
[6] RREs are also required to notify CMS and MAOs when the RRE has made the determination to assume responsibility for ongoing medical services or items for one their insureds that is also a Medicare beneficiary.

each claimant.  42 U.S.C. § 1395y(b)(8)(E)(i).

38.     However, compliance with these reporting requirements does not absolve the primary payer of its obligation to pay first.  The reporting requirements are separate and apart from a primary payer's obligation to pay first under the MSP provisions.  Reporting does not, itself, provide a safe harbor from making primary payments.  It only avoids the imposition of civil penalties.  If a primary payer was responsible to pay first, it must pay first regardless of conduct, intent, or even the primary payer's knowledge of a potential secondary payer.  The obligation of a primary payer to pay first or reimburse CMS or MAOs is only discharged by making the payment.

**V.     Personal Injury Protection (PIP) / Basic Reparation Benefits (BRB) / Medical Payment (Med Pay) Insurance**

39.     Personal Injury Protection ("PIP"), Basic Reparation Benefits ("BRB"), and Medical Payment ("Med Pay") are types of automobile insurance coverage that pay for medical expenses arising from an automobile accident.

40.     PIP, BRB, and Med Pay are sometimes referred to as "no-fault" coverage because the policies are designed to pay for medical expenses regardless of who is "at fault" in causing the injury.  If a person covered under a policy which includes PIP, BRB, or Med Pay coverage is injured in an automobile accident, the insurance provider is obligated to pay for that person's medical expenses, up to the policy's limit, without regard to fault.

41.     Certain states and territories, *i.e.*, Hawaii, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Dakota, Pennsylvania, Puerto Rico, and Utah, mandate minimum PIP, BRB, or Med Pay coverage.[7]  For example, in Massachusetts, drivers are required to have at least $8,000 in PIP coverage.  This means the first $8,000 of medical expenses for a person involved in an automobile accident in Massachusetts are covered by the insured's PIP policy regardless of fault.  Other states require automobile insurance companies to offer PIP, BRB, or Med Pay coverage as an add-on to traditional insurance, *i.e.*,

_____

[7]  In Kentucky, New Jersey, and Pennsylvania, the states require that drivers choose between either no-fault or traditional tort law forms of automobile insurance.

Arkansas, Delaware, District of Columbia, Maryland, New Hampshire, Oregon, South Dakota, Texas, Virginia, Washington, and Wisconsin.  In addition, other states have no specific regulations regarding PIP, BRB, or Med Pay coverage, but such coverage is often provided for by auto insurance companies such as Defendant.

42.     Under the MSP provisions, PIP, BRB, Med Pay and other "no-fault" insurance providers are considered "primary payers" under Medicare.  This means, when a Medicare beneficiary is involved in an accident, if that beneficiary has PIP, BRB, or Med Pay coverage, the no-fault coverage must pay for accident-related medical expenses as a primary payer. Therefore, Medicare benefits only apply once the policy limits of the PIP, BRB, or Med Pay coverage have been reached.[8]

43.     Each state's no-fault law is intended to expeditiously provide insurance benefits to the insured for medical treatment regardless of fault.

44.     The purpose of the no-fault statutory framework is to provide swift and virtually automatic payment. All no-fault laws abolish "a traditional common-law right by limiting the recovery available to car accident victims" and in exchange, require PIP insurance that is recoverable without regard to fault.  No-fault insurers are primary payers of any bills for medical services and supplies incurred by their insureds resulting from the use, maintenance, and/or operation of a motor vehicle.

## **PARTIES**

45.     MAO-MSO Recovery II, LLC is a Delaware entity, with its principal place of business located at 45 Legion Drive, Cresskill, New Jersey 07626.  MAO-MSO Recovery II, LLC is a citizen of the State of Delaware and is not a citizen of the state of Defendant. Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff.  As part of those assignments, Plaintiff is empowered to recover

---

[8] Regardless of whether payments to an injured party are made pursuant to a voluntary settlement or to satisfy a judgment, Medicare is entitled to reimbursement of payments made for medical treatment related to the automobile accident injuries covered under the PIP, BRB, or Med Pay coverage.

reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendant.

46.     MSP Recovery, LLC is a Florida entity, with its principal place of business located at 5000 SW 75th Avenue, Suite 400, Miami, Florida 33155.  MSP Recovery, LLC is a citizen of the State of Florida and is not a citizen of the state of Defendant.  Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff.  As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendant.

47.     Plaintiff MSPA Claims 1, LLC is a Florida entity, with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.  MSPA Claims 1, LLC is a citizen of the State of Florida and is not a citizen of the state of Defendant.  Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff.  As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendant.

48.     Plaintiffs have been assigned all legal rights of recovery and reimbursement for health care services and Medicare benefits provided by health care organizations that administer Medicare benefits for enrollees under Medicare Part C; whether said rights arise from (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of conditional payments made by the assignor health plans, including the right to recover claims for health care services billed on a fee-for-service basis.

49.     Defendant Defendant USAA Casualty Insurance Company is a Texas company, with its principal place of business located at USAA Building, 9800 Fredricksburg Road, San Antonio, Texas 78288.

50.     Defendant is not a citizen of the State of Florida or Delaware.

## REPRESENTATIVE FACTS

51.     Exhibit A, attached hereto and incorporated herein, refers to representative claims

of the Plaintiffs.

## CLASS DEFINITION

52.     The putative class (hereinafter referred to as "Class Members") is defined as:

Entities that contracted directly with the Centers for Medicare and Medicaid
Services ("CMS") and/or their assignees pursuant to Medicare Part C, including
but not limited to, MAOs and other similar entities, to provide Medicare benefits
through a Medicare Advantage Plan to Medicare beneficiaries for medical
services, treatment, drugs, and/or supplies ("Medicare Services"), as required and
regulated by HHS and/or CMS, as a direct payer of Medicare Services on behalf
of Medicare beneficiaries either for parts A, B and/or D, all of which pertain to
the same Medicare Services that are the primary obligation of the Defendant; and

That have made payment(s) for Medicare Services, whereby, the MAO or its
assignee, as a secondary payer, has the right and responsibility to obtain
reimbursement for such Medicare Services.  Defendant is the primary payer
pursuant to no-fault laws, as well as Defendant's no-fault and/or medical
payments insurance policies throughout the United States and its territories, and
are financially responsible to Medicare beneficiaries for the medical expenses
covered pursuant to automobile insurance policies;

Where the Defendant failed to properly pay the medical bills on behalf of its
insureds and has otherwise failed to reimburse, including but not limited to, the
MAOs or their assignees.

This class definition excludes (a) Defendant, its officers, directors, management,
employees, subsidiaries, and affiliates; and (b) any judges or justices involved in
this action and any members of their immediate families.

## CAUSES OF ACTION

53.     The claims asserted in this Complaint arise from Medicare Services paid for by

the Class Members to treat the injuries suffered by their enrollees as a direct result of automobile

accidents.

54.     In addition to having been enrollees with the Class Members at the time of

automobile accidents, Class Members' enrollees were also covered by a no-fault and/or medical

payments policy issued by the Defendant.

55.     Defendant failed to make primary payment and/or appropriately reimburse the Class Members.

56.     Defendant issued no-fault and/or medical payments policies and collected premiums.

57.     The Class Members advanced Medicare payments on behalf of their enrollees for medical treatment and supplies for which Defendant was responsible as primary payer. Defendant was primarily responsible as each enrollee was covered by the respective automobile insurance policies issued by Defendant; instead Class Members paid for the enrollees' Medicare Services when Defendant had the primary obligation to do so.  Accordingly, Plaintiffs seek damages on behalf of themselves and similarly situated MAOs and their assignees for Defendant's violation of the MSP provisions and direct right of recovery for breach of contract.

58.     The MAOs involved in this class action discharged their obligations and paid the medical bills for the Medicare Services rendered to their enrollees, which were related to automobile accidents.  *See* 42 U.S.C. § 1395w-27(f); 42 C.F.R. §§ 422.214 and 422.520. Plaintiffs' rights, and those of others similarly situated, arise from the payments made by MAOs as secondary payers, for which Defendant was primarily responsible and should have itself paid, or properly reimbursed the MAOs for their payments.  *See* 42 U.S.C. § 1395y(b)(3)(A); 42 U.S.C. § 1395y(b)(2)(B)(ii).

### COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

59.     Plaintiffs incorporate by reference paragraphs 1-58 of this Complaint.

60.     Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly-situated MAOs.

61.     The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the Defendant was the primary payer for a claim covered by Medicare; (2) the Defendant did not make the primary payment or reimburse the Medicare benefit provider for its payment; and (3) damages.

14

62.     Defendant offers and sells automobile insurance policies which provide no-fault PIP, BRB, or Med Pay coverage provisions.  These policy provisions are designed to pay for medical expenses arising out of any automobile accident regardless of fault.  Accordingly, in each case Defendant was contractually obligated to be the primary payer for all Medicare services instead of the Plaintiffs and the Class Members.

63.     Defendant's insureds are also Medicare beneficiaries enrolled in the Class Members' plan, whose automobile accident-related Medicare Services were paid for by the Class Members, including entities that assigned their recovery to Plaintiffs, *i.e.*, those entities "that provide Medicare benefits to Medicare beneficiaries for medical services, treatment, and/or supplies under Medicare Part C."

64.     Under the MSP provisions, a payer becomes a "primary payer" when responsibility for payment is demonstrated.  Responsibility is demonstrated by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means."  That last part, "by other means," can be demonstrated by the existence of a contractual obligation.  In this case, the Defendant was contractually obligated to make payments for all of the Medicare Services covered by the respective insurance policies, up to the limits of coverage.

65.     A number of the Defendant's insureds who had PIP, BRB, or Med Pay no-fault coverage, who were also Medicare Part C beneficiaries, were involved in automobile accidents which resulted in the necessary and reasonable provision of Medicare Services.

66.     In this case, Defendant failed to administratively appeal the MAOs' right to reimbursement within the administrative remedies period on a class wide basis. Defendant, therefore, is time-barred from challenging the propriety or amounts paid.

67.     Pursuant to the underlying PIP, BRB, or Med Pay policy coverages, Defendant

was, as primary payer, obligated to pay for those medical expenses, up to the policy limit.[9]

68.     Instead, the Class Members and entities that have assigned their recovery rights to Plaintiffs paid for those items and services as part of providing Medicare benefits.

69.     Those payments were conditional payments since the Defendant was, by law, primary payers under the MSP provisions.  Pursuant to the MSP provisions, Defendant is required to reimburse Class Members for those payments when this responsibility is demonstrated through the Defendant's no-fault and/or medical payments insurance coverage.

70.     Failure to reimburse Plaintiffs and the Class Members for making payments has enabled Defendant to circumvent its responsibilities under the MSP provisions.

71.     Defendant has derived substantial profits by placing the burden of financing medical treatments for its policy holders upon the shoulders of MAOs.  Not only did the Defendant avoid having to pay for medical expenses they were otherwise obligated to pay, the Defendant took advantage of the less expensive costs passed on to Medicare patients.

72.     Defendant has profited from its refusal to comply with the MSP provisions.

73.     Pursuant to 42 U.S.C. § 1395y(b)(3)(A), Plaintiffs and the Class Members are entitled to double damages from Defendant due to its failure to provide primary payment for those claims which the Defendant was the primary payer and for which the Defendant has not provided appropriate reimbursement to the Plaintiffs or Class Members.

<u>COUNT II</u>
**<u>Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract</u>**

74.     Plaintiffs incorporate by reference paragraphs1-58 of this Complaint.

75.     MAOs are subrogated the right to recover primary payment from Defendant for the Defendant's breach of contract with its insured, pursuant to the MSP provisions. Specifically, Defendant was contractually obligated to pay for medical expenses and items arising out of an automobile accident, and Defendant failed to meet that obligation.  This obligation was, instead, fulfilled by the Plaintiffs and other Class Members.  Under the MSP

---

[9] This can be demonstrated by Defendant's issuance of no-fault and Med Pay insurance to their insureds.

provisions, Plaintiffs are permitted to subrogate the enrollee/insured's right of action against the Defendant. *See* 42 C.F.R. § 411.26.

76.     Plaintiffs complied with any conditions precedent to the institution of this action, to the extent applicable.

77.     Defendant failed and/or refused to make complete payments of the no-fault benefits as required by its contractual obligations.

78.     Defendant failed to pay each enrollee's covered losses, and Defendant had no reasonable proof to establish that they were not responsible for the payment.

79.     Defendant's failure to pay the medical services and/or items damaged Plaintiffs and the Class Members as set forth herein.  Plaintiffs and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical expenses related to the subject automobile accidents, pursuant to their agreements with CMS and the provider of services.

<u>CLASS ALLEGATIONS</u>

**I.      National Damages and Injunctive Relief Classes**

80.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' medical expenses associated with an automobile accident, when Defendant should have made those payments as primary payers and should have reimbursed the Class Members.

81.     As discussed in this class action Complaint, Defendant has failed to provide primary payment and/or appropriately reimburse the Class Members for money it was statutorily required to pay under the MSP provisions.  This failure to reimburse applies to Plaintiffs, as the rightful assignees of those organizations that assigned their recovery rights to Plaintiffs, and to all Class Members.  Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

82.     Class Members have been unlawfully burdened with paying for the medical costs

of their beneficiaries when the law explicitly requires Defendant to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendant's failure to reimburse Plaintiffs and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

83.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

   a.   Numerosity:  There are hundreds of MAOs throughout the United States who were not reimbursed by Defendant under a policy which provided PIP, BRB, or Med Pay coverage for medical expenses arising out of automobile accidents. Thus, the numerosity element for class certification is met.

   b.   Commonality:  Questions of law and fact are common to all members of the Class.  Specifically, Defendant's misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C.  Defendant failed to make reimbursement payments, report accidents involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course.  Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendant failed to comport with their statutory duty to pay or reimburse MAOs pursuant to the MSP provisions.  Each Class Member shares the same needed remedy, *i.e.*, reimbursement.  Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C enrollees, as a result of Defendant's practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

   c.   Typicality:  Plaintiffs' claims are typical of the Class because their claims arise

from the same course of conduct by Defendant, *i.e.*, failure to make payment and failure to reimburse MAOs.  Plaintiffs' claims are, therefore, typical of the Class.

     d.  Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members.  In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

84.    The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("National Damages Class").  Defendant, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving both Plaintiffs, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

85.    Proceeding with a damages class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated MAOs to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties.  The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

86.    Ascertaining and administering the proposed National Damages Class will be

relatively simple.  The Defendant maintains a listing of every policy they have issued containing PIP, BRB, or Med Pay coverage.  Additionally, Defendant knows which of its policy holders has been involved in an automobile accident.  Once that data is compiled and organized, Plaintiffs can determine which of the policy holders were Medicare beneficiaries at the time of the accident.  Then, using the database, Plaintiffs and the Class Members can identify those payments made for medical treatment where the Defendant was (1) the primary payer and (2) for which reimbursement was not made.  Indeed, a Florida state class was recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance*, Case No. 2015-1946 CA-01 (Fla. Cir. Ct. 11 Dist.) using the same methodology.

87.     The Class is also properly brought and should be maintained as a class action under Rule 23(b)(2) ("Injunctive Relief Class").  Defendant has acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**II.     National Issues Class**

88.     Plaintiffs seek, in the alternative to a National Damages Class and Injunctive Relief Class, a National Issues Class.

89.     Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

90.     In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiffs bring this action on behalf of themselves and the Class Members to resolve, *inter alia*, several important issues:

> a.  Whether Defendant occupies primary payer status as defined by the MSP provisions;
>
> b.  Whether Defendant's PIP, BRB, or Med Pay policy coverages qualify it as primary payer for medicial expenses arising out automobile accidents;
>
> c.  Whether Defendant properly complied with its reporting requirements;

    d.   Whether Class Members are entitled to double damages;

    e.   Whether Defendant's failure to timely challenge the reasonableness and/or necessity of payments made by the Class waives the defense; and

    f.   Other threshold legal and factual questions that apply to the entire class.

91.    The Issues Class would be "carved at the joints" after disposition of the preliminary questions of the Defendant's status as primary payers and its duties flowing therefrom.  The individual Class Members would then be able to rely upon the preclusive effect of the determination of Defendant's status as primary payers to then individually litigate specific issues such as damages.

92.    The Issues Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a.   Numerosity: Individual joinder of the Issues Class Members would be wholly impracticable. There are hundreds of MAOs throughout the United States who were not reimbursed by Defendant under a policy which provided PIP, BRB, or Med Pay coverage for medical expenses arising out of automobile accidents. Thus, the numerosity element for class certification is met.

    b.   Commonality: Questions of law and fact are common to the Issues Class. As this is an issues class under Rule 23(c)(4), there are by definition common questions of law applicable to all Class Members.

    c.   Typicality:  Plaintiffs' claims are typical of the Class because their claims arise from the same course of conduct by Defendant, *i.e.*, failure to make payment and failure to reimburse MAOs.  Plaintiffs' claims are, therefore, typical of the Class.

    d.   Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Their interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members.  In addition, Plaintiffs are represented by counsel

who are competent and experienced in class action litigation and also have no conflicts.

93.     The Issues Class is properly brought and should be maintained as a class action under Rule 23(b) because an issues class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues predominate over any questions affecting only individual Class Members.  Proceeding with an issues class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated MAOs to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties.  The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

## JURY TRIAL DEMAND

94.     Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

95.     WHEREFORE, Plaintiffs, individually and on behalf of the Class Members described herein, pray for the following relief:

    a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4), and certify the respective Classes;

    b.  designate Plaintiffs as representatives for the respective Classes and Plaintiffs' undersigned counsel as Class Counsel for the respective Classes; and

    c.  issue a judgment against Defendant that:

i.       grants Plaintiffs and the Class Members a reimbursement of double

damages for those moneys the Class is entitled to under 42 U.S.C.

§ 1395y(b)(3)(A);

ii.      grants Plaintiffs and the Class Members a reimbursement of

damages for those moneys the Class is entitled to pursuant to their

direct right of recovery for breach of contract within Count II;

iii.     grants Plaintiffs and the Classes alleged herein equitable relief by

issuing an injunction ordering Defendant to comply with its

statutory duties, lest Plaintiffs and the Class Members suffer

irreparable future harm;

iv.      grants Plaintiffs and the Class Members pre-judgment and post-

judgment interest consistent with the statute; and

v.       grants Plaintiffs and the Class Members such other and further

relief as the Court deems just and proper under the circumstances.

Dated:  March 13, 2017

*/s/ Frank C. Quesada, Esq.*

Christopher L. Coffin (to be moved *pro hac vice*)
Nicholas R. Rockforte (to be moved *pro hac vice*)
Tracy L. Turner (to be moved *pro hac vice*)
Courtney L. Stidham (to be moved *pro hac vice*)
PENDLEY, BAUDIN & COFFIN, LLP
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Phone: (504) 355-0086
ccoffin@pbclawfirm.com
nrockforte@pbclawfirm.com
tturner@pbclawfirm.com
cstidham@pbclawfirm.com

Michael L. Baum (to be moved *pro hac vice*)
R. Brent Wisner (to be moved *pro hac vice*)
Pedram Esfandiary (to be moved *pro hac vice*)
BAUM, HEDLUND, ARISTEI &
GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA  90025
Tel: (310) 207-3233
Fax: (310) 820-7444
mbaum@baumhedlundlaw.com
rbwisner@baumhedlundlaw.com
pesfandiary@baumhedlundlaw.com
***Counsel for Plaintiffs***

Frank C. Quesada, Fla. Bar No. 29411
Christine M. Lugo, Fla. Bar No. 10+515
MSP RECOVERY LAW FIRM
5000 SW 75th Avenue, Suite 400
Miami, Florida 33155
Serve: Fquesada@msprecovery.com;
serve@msprecovery.com
***Co-Counsel for Plaintiffs***